THE PEOPLE, ex rel. MARTIN FRELIGH, Appellant, v. GEORGE W. MATSELL et al., as Trustees, etc., Respondents.

Where under the provision of the act of 1871 in reference to "the police life insurance fund" (Chap. 126, Laws of 1871) the commissioners of police of the city of New York have, as the board of trustees of that fund, granted a pension to a retired officer of the police force, the beneficiary does not thereby acquire a vested right to the pension, but the board has by the act (§ 5) authority in its discretion to discontinue the same.

(Submitted October 26, 1883; decided November 27, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made February 7, 1879, which affirmed an order of Special Term, denying an application for a writ of *mandamus* herein, directed to defendants as commissioners of police of the city of New York, and as such constituting the board of trustees of "the police life insurance fund," requiring said board to rescind a resolution discontinuing a pension granted to the relator, and to restore him to the roll.

The relator, on and prior to February 8, 1873, was surgeon of police; on that day, by a resolution of said board, he was dismissed from the force and retired on a pension. On the 29th day of June, 1875, the said board passed a resolution discontinuing the pension and he was dropped from the rolls.

*W. Fullerton* for appellant. *Mandamus* is the proper remedy. (*People, ex rel. Debennetti,* v. *Clerk of Marine Court,* 3 Abb. Ct. of App. Dec. 491; *People, ex rel. Whitmore,* v. *Supervisors of N. Y.,* id. 566; 11 Abb. Pr. 114; *People, ex rel. Com'rs,* v. *Common Council of N. Y.,* 3 Keyes 81; *People, ex rel. Whitmore,* v. *Bd. of Supervisors of N. Y.,* 2 id. 258; *Buck* v. *City of Lockport,* 6 Lans. 251; *Healey* v. *Dudley,* 5 id. 115; *People* v. *Trustees of Saratoga,* 54 Barb. 480.) The defendants had no lawful power or authority to order the relator's pension to be discontinued, and it is, therefore, their bounden duty to restore him to the "pension-roll," and cause his pension to be paid. (Laws of 1871, chap. 126; id., chap. 127, § 5.) The act of 1871 is merely a collating and embodying in one separate and distinct statute a variety of statutory provisions in regard to the police life insurance fund, before then enacted, and scattered through the several acts in respect to the "metropolitan police" and the city charter of 1870. (Laws of 1857, chap. 569, §§ 24, 25; Laws of 1860, chap. 259, § 67; Laws of 1868, chap. 535, § 2; Laws of 1870, chap. 137, § 66; id., chap. 383.)

*Charles F. MacLean* for respondents. This court cannot review the legislation of the board of police on a common-law

1883.]     PEOPLE, ex rel. FRELIGH, v. MATSELL et al.     181

Opinion of the Court, per FINCH, J.

writ of *mandamus*. (*People, ex rel. Savage*, v. *B'd of Health*, 12 Abb. Pr. 88.) If the board of police had no power to pass the resolution complained of, it has no legal existence, and the remedy for the consequences thereof is then by action. (*People* v. *Mayor, etc.*, 2 Hill, 9.) The right of the relator to that which he demands is in doubt, and a *mandamus*, therefore, will not be granted. (*People, ex rel. Perkins*, v. *Hawkins*, 46 N.Y. 9.) Plenary discretion over the fund, both as to pensions and pensioners, was given to the board by the act of 1871, and this court cannot interfere with the exercise of that discretion. (*People, ex rel. Clapp*, v. *B'd of Police*, 12 N. Y. Sup. Ct. 457.) The relator, having accepted his pension, must be held to have had notice of all the provisions of the act, including the one that neither his pension, nor the payment of it, should be chargeable as matter of right upon the fund. (*Baker* v. *City of Utica*, 19 N. Y. 326; Laws of 1871, chap. 126, § 5.)

FINCH, J. The right of the relator is the logical result of three propositions which sustain his claim if they interpret the statute provisions correctly. Two of these propositions are possibly sound, but the third, upon which the whole contention hinges, is in our opinion erroneous. That the "police life insurance fund" belongs to the State; that it is accumulated by legislative power and authority from taxes or assessments imposed upon officers, and from abandoned and unclaimed property which would otherwise revert to the sovereign; and that the State, therefore, is the grantor of the fund or its income to those who are the beneficiaries, — is the substance of the relator's first proposition, and may be conceded. That the defendants, in their official capacity as "police commissioners of the city," are the trustees of the fund, with power of management, and authorized to select and designate the beneficiaries under the restrictions and conditions imposed by the statute, which is their power of attorney, is the relator's second proposition, and may also be conceded. But that, when they have once determined the facts, and designated, in the manner provided by the statute, an individual as such beneficiary, and

fixed the amount of the pension, their power is spent and the beneficiary holds under a grant from the State and not dependent upon the discretion of the trustees; this, which is the relator's final proposition, and discloses the pith of the controversy, we cannot admit.

Reasoning from the character of the fund as in the nature of a charity, although that is not to be said without some serious qualification, and from the changeable and uncertain sources of supply from which it is fed, we should expect to find the discretion of the chosen trustees broad enough to reach emergencies naturally to be expected, and unfettered by claims upon the fund fastened by vested rights and mandatory provisions. Such discretion is conferred by the act of 1871. (Chap. 126, § 5.) The section referred to contains a double provision. As to members of the police force, and their widows and children for whom pensions are provided by a previous section (§ 4), it specifically enacts that " the board of police may, in its discretion, at any time " order such pension, or any part thereof, to cease. Then follows a general and broad provision that nothing in the act itself, or in any other act, " shall render the granting or payment of any pension obligatory upon the board of police, or board of trustees, as chargeable as matter of right upon said police life insurance fund." Section 6, which follows, gives authority to the board of police to dismiss from office " any captain, sergeant, clerk, or surgeon " and place him on the pension-roll for an amount equal to half-pay. The relator contends that the words " granting or payment " mean one and the same thing and not two different things. On the contrary, we think the evident meaning of the legislature was that no pension, whether to members of the force or dismissed officers, should at any time or in any manner be chargeable upon the fund as matter of right; and that both the original " granting " of the pension, and its after " payment " should rest in the wise discretion of the trustees. They could all the time know the condition of the fund, and pay it out where most needed and to the most deserving, and purposely the entire matter was put within their con-

trol. We can see no reason why the legislature should have intended to discriminate in favor of the retired officer, and against the maimed or disabled member, or the widow or children of one killed in the service. It is conceded that they have no right as against the fund, and are subject wholly to the discretion of the board. We discover no reason why the pension of the retired officer should have any firmer hold upon the fund. In the construction of a statute, effect must be given, if possible, to all of the language employed. (*People* v. *McGloin*, 91 N. Y. 250.) We ought not to treat the word "payment" as synonymous with "granting" and so superfluous, where it has in the frame of the law its own pertinent application. It is said, however, that the final clause of section 5 is superfluous in its application to the pensions named in section 4, because as to them there was already a provision permitting the discontinuance of a pension. That provision, however, said nothing as to the original grant and the discretion of the board in that respect, and upon that the final clause could operate, while as to other cases it affected both the original grant of the pension and its payment thereafter. We think the application for a *mandamus* was properly denied.

The order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.